## SIMMONS *v.* THE STATE.

In the trial of a criminal case it is error to admit evidence offered to show acquiescence of the accused by silence in statements made by the officer who arrested him to another officer, as to the sayings and conduct of the accused when arrested, when it is not affirmatively shown that the accused was present when the conversation occurred, or that he heard the same, or that he failed to deny the truth of the statements when they were made.

Argued May 19, — Decided June 3, 1902.

Indictment for murder. Before Judge Henry. Floyd superior court. March 24, 1902.

*M. B. Eubanks* and *C. E. Carpenter*, for plaintiff in error.

*Boykin Wright, attorney-general,* and *Moses Wright, solicitor-general,* contra.

SIMMONS, C. J.    An indictment for murder was found against Fitz Simmons.  He was tried and convicted.  He moved for a new trial, and the motion was overruled. · He excepted.  From the brief of evidence it appears that in the trial of the case the State introduced a witness who testified as follows: " I think there was something said in the defendant's presence about his arrest and what he did at the time.   The officers down there told me that he attempted to shoot the officers when they arrested him.   I think that the defendant was present when this was told me.   The policeman caught hold of him first, and he put his hand down in his pocket and pulled his pistol out and about that time Mr. Weldon, the mayor, stepped up and caught hold of him, and he told them that 'if that man had not come up, I would have got me another man.'   I think this was all said in the presence of the defendant; I wouldn't swear it positively.   It might have been stated to me as soon as I met the officers.   I was only there a few minutes.   Defendant might have been in prison when they started to telling me, but I know defendant denied it afterwards to me.   I am pretty positive that it was said in defendant's presence.   I don't know that defendant said anything at the time; he denied it coming up. I don't know as I spoke to him about it.   It was a conversation between me and the officers there; the words were not addressed to him."    All this testimony of what the witness had been told as to the sayings and doings of the accused was objected to, at the time it was offered, on the grounds that it was hearsay and that it did not throw any light on the killing under investigation.   The objections were overruled, and this ruling was made one of the grounds of the motion for new trial.

We think this ground was well taken.  It appears from the evidence that Simmons had shot and killed a man in Floyd county, Georgia.   He was arrested some time afterwards in the State of Alabama, and the witness who testified as above was sent to bring him back to this State.   This witness testified that he was at the place where the arrest had been made for a few minutes only, and that in that time the conversation took place.   He was not positive that the accused was present at the time.   His testimony does not

show that the accused heard or could have heard what was said, or that the accused failed to deny at the time the truth of the statements. In *Rolfe* v. *Rolfe*, 10 *Ga.* 143, Warner, J., in commenting on " admissions inferred from the verbal statements of others," said : " Nothing, it is said, can be more dangerous than this kind of evidence. It should always be received with caution, and never ought to be received at all unless the evidence is of direct declarations of that kind which naturally calls for contradiction ; some assertion made to the party with respect to his right which, by his silence, he acquiesces in." The authorities recognize it as a rule that, before such evidence can be admitted in a criminal case, it must affirmatively appear that the accused was present and heard the inculpatory statements made against him, and, by silence, acquiesced in them. It will be seen from the evidence above quoted that in the present case it did not positively appear that the accused was present, or that, if present, he heard or could have heard what was said. Nor does it appear that he did not deny the truth of the statements made. The testimony leaves it in doubt whether the accused was present, the witness being unable to testify positively to this fact. He fails entirely to show that the accused heard the conversation, except by showing that the accused afterwards denied the statements made, and this may have been in answer to questions from the officer, although the latter "don't know as [he] spoke to him about it." Again, the witness does not say that the accused failed to deny the statements when they were made. Further still, it is very doubtful whether the accused, even if present and hearing the conversation, was called upon to speak. The only portion of the conversation which could be relevant to the present case was the statement that the accused had said to the arresting officers that if the mayor had not prevented him he would have " got " *another* man, and it is not clear whether these words applied to the killing in Floyd county or to some other transaction. That a negro under arrest, hearing a conversation between officers who do not in any way address him, would be called upon to interrupt the conversation and interpose a denial of the truth of what was said, is at most a very doubtful proposition. See *Jones*·v. *State*, 65 *Ga.* 147; *Ware* v. *State*, 96 *Ga.* 349; *Chapman* v. *State*, 109 *Ga.* 157; 1 Gr. Ev. (16th ed.) §§ 197, 198; 6 Am. & Eng. Enc. Law (2d ed.), 557 et seq.

*Judgment reversed. All concurring, except Lewis, J., absent.*